IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBIN L. PEREZ,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　) Civil Action No. 15-196-E
　　　　　　　　　　　　　　　　　　)
CAROLYN W. COLVIN, ACTING　　　　 )
COMMISSIONER OF SOCIAL SECURITY, )
　　　　　　　　　　　　　　　　　　)
　　　　Defendant.　　　　　　　　　)

O R D E R

AND NOW, this 30th day of August, 2016, upon consideration of Plaintiff's Motion for Summary Judgment, the Court, upon review of the Commissioner of Social Security's final decision, denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381, et seq., finds that the Acting Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a

federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff contends that the Administrative Law Judge ("ALJ") failed to evaluate properly certain evidence in formulating Plaintiff's residual functional capacity assessment ("RFC"). In essence, Plaintiff alleges that the ALJ failed to consider all the relevant medical evidence related to Plaintiff's mental health, and that he erred in considering certain factors while assessing Plaintiff's credibility. The Court disagrees and finds that the ALJ properly considered the relevant evidence presented, and that substantial evidence supports the ALJ's findings as well as his ultimate determination, based on all the evidence presented, of Plaintiff's non-disability.

The Court finds no merit in Plaintiff's contention that, in determining her RFC, the ALJ improperly considered the medical evidence as a whole regarding her mental health. As the finder of fact, it is the ALJ's responsibility to formulate a claimant's RFC, and the determination of whether an individual is disabled "is an ultimate issue reserved to the Commissioner." Smith v. Comm'r of Social Sec., 178 Fed. Appx. 106, 112 (3d Cir. 2006); 20 C.F.R. §§ 404.1546(c), 416.946(c). Moreover, it is well-established that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). Thus, it is the duty of the ALJ to consider all the relevant evidence in the record and to formulate an RFC based upon an independent analysis of that evidence. See 20 C.F.R. §§ 404.1545, 416.945.

First, the Court finds that the ALJ did not fail to give proper consideration to the medical evidence as a whole in formulating Plaintiff's mental RFC. Rather, upon review of the ALJ's decision, the Court notes that the ALJ thoroughly reviewed the evidence at great length and provided a detailed analysis of his reasoning. In fact, the ALJ cited an extensive amount of evidence in his decision, including treatment notes, medications, mental status examinations, educational and work history, activities of daily living, instances of non-compliance with treatments, and medical opinions. (R. 33-38). In so doing, the Court finds that the ALJ fulfilled his duty as fact-finder to evaluate thoroughly the relevant evidence in reaching his ultimate conclusion that Plaintiff maintained the RFC to perform light work, "except she can occasionally interact with the public and occasionally understand, remember, and carry [] out complex and detailed tasks," and that she cannot talk or speak as part of a job, apart from incidental conversations. (R. 30).

Plaintiff then contends, more specifically, that the ALJ improperly considered the "situational" aspect of her mental health difficulties in his decision. The Court notes at the outset that, in evaluating Plaintiff's credibility, the ALJ was certainly permitted to include—among the many other factors that he considered—the fact that her symptoms were exacerbated by certain situational stressors. For example, the ALJ stated in his analysis that, while Plaintiff had a long history of depression and anxiety, she had performed semi-skilled and skilled work until her alleged onset date, and the record clearly indicated that "her mental health difficulties are mainly situational, revolving around problems with her husband and son." (R. 33). In reaching this conclusion, the ALJ explained that Plaintiff "noted symptoms of depression because her husband

was physically abusive towards her and her son and unfaithful to her;" that she "expressed depression and anxiety about her son's behavior problems and mental health issues;" that "her anxiety worsened when her son moved in with his father and her husband got life insurance on her son because she was afraid that he was going to harm the child;" and that she reported increased anxiety when her husband was ill. (R. 33). The ALJ noted that Plaintiff's treating psychiatrist had found her symptoms to be "understandable," given these stressors. (R. 33, 370).

The ALJ further noted that the evidence showed that, while Plaintiff's mental health symptoms were relieved with medications, they were exacerbated by her situational stressors, including her abusive relationship with her husband and her son's mental health and behavioral issues, as well as the death of her mother and the murder of her best friend. (R. 33-35). The ALJ stated that Plaintiff had reported that, with medication and counseling, "she was calmer and better able to cope with her stressors, particularly when she was out of the abusive relationship." (R. 34). Moreover, she denied any depression or anxiety whatsoever at times, and she also denied side effects from her anxiety medications. (R. 34). The ALJ noted also that, since Plaintiff's alleged onset date, most of her mental status examinations were normal, and that, although she became "tearful or visibly upset when discussing her stressors or the loss of a loved one," she "was able to redirect and focus on calming herself." (R. 34). Furthermore, the ALJ explained that the abnormal findings that did occur during her mental status examinations "revolved around increased stressors, such as, when her son tried to commit suicide, the death of her mother, and the murder of her best friend," and that Plaintiff's treating psychiatrist noted that such symptoms were "understandable" symptoms of depression and bereavement. (R. 34, 613).

The ALJ also noted that Plaintiff had exhibited an "acute stress reaction" which resulted in her being brought to an emergency room by the police when she threatened to harm her husband after finding him with another woman. (R. 35). The ALJ stated that, when Plaintiff was brought in, she admitted that she had not been taking her medication, and within 24 hours she calmed down and was released. (R. 35). The ALJ noted that there was no evidence of any other episodes of decompensation, and that this reaction was brought on by the circumstances of seeing her husband with another woman, and not an abnormal reaction to normal work-related stress. (R. 35). In fact, the ALJ further explained that Plaintiff's treating psychiatrist and her counselor had recommended that she find employment or undergo vocational rehabilitation. (R. 35, 555, 577). The ALJ thus concluded that no evidence in the record indicated that Plaintiff's "condition would deteriorate from any normal stress experienced in an unskilled work environment." (R. 35). Accordingly, the Court finds that the ALJ appropriately considered the relevant situational factors, which aggravated Plaintiff's symptoms and which were noted by her physicians, in assessing the credibility of her stated symptoms and in finding ultimately that "there was no evidence to suggest that she had additional limitations on her ability to perform mental work tasks." (R. 35).

Finally, Plaintiff also argues that the ALJ erred in finding her to be not disabled because of her failure to comply with various treatments and recommendations. The Court notes first, however, that the ALJ based his credibility finding on a number of factors, and Plaintiff's non-compliance was only one of many factors which the ALJ found indicated that Plaintiff's statements about the limiting effects of her symptoms were not as severe as she alleges. Nevertheless, the Court finds that the ALJ was justified in considering Plaintiff's medical history

showing significant treatment non-compliance. For example, in his decision, the ALJ noted various facts indicating non-compliance, including that Plaintiff had cancelled or failed to appear for various appointments, that she did not appear to be using her TENS unit, and that she had stopped using some of her medications.

Although Plaintiff now attempts to claim that her excuses for missing appointments or her failure to take medications are merely symptoms of her mental impairment, the Court finds that the evidence simply does not support this contention. Plaintiff's excuses for cancelling appointments included such reasons as her dog having puppies, bad weather, and her husband having his own appointments, and do not appear to reflect a mental impairment, nor does Plaintiff point to any evidence showing that such cancellations were due to mental impairment. Alternatively, Plaintiff argues that the travel involved in attending her appointments made such visits cost prohibitive, but Plaintiff again fails to indicate any evidence to show that this was the case. Then, in a third attempt to justify her missed appointments, Plaintiff states that the side effects of her prescribed treatment resulted in an inability to travel for treatment as frequently as it was prescribed, but Plaintiff again provides no evidence to support this contention. Similarly, Plaintiff's suggestion that she stopped taking certain medications due to their side effects is also not feasible since such allegation is not supported by the record, which lacks mention of significant side effects (or of any notion that such alleged side effects prevented her from keeping some of her appointments). Finally, Plaintiff states generally that non-compliance with psychiatric medication can be attributed to a number of issues, but she does not explain what issue allegedly applies to her situation, nor does she cite any evidence in support thereof.

Also, as a side argument, Plaintiff suggests that her average of having approximately two medical appointments scheduled per month shows that—had she attended all such appointments (which she did not)—she would have been precluded from maintaining employment during that time. Plaintiff reasons that, since the Vocational Expert ("VE") testified that missing two days of work per month would not have been tolerated during a probationary period at a new job, she would not have been able to maintain any such job during that time. (R. 69). Plaintiff's argument is disingenuous, however, because such appointments, as the VE pointed out, would not necessarily need to be scheduled during work hours, and would therefore not necessarily preclude employment. (R. 70-71).

Ultimately, the ALJ did in fact find that Plaintiff has a number of severe impairments, including the mental impairments of major depressive disorder (moderate, recurrent) and generalized anxiety disorder. (R. 27). However, upon substantial review of all the evidence of record, the ALJ simply found that the evidence as a whole did not support the extreme limitations that Plaintiff alleges. Thus, the ALJ found, after careful consideration of all the evidence, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for the reasons he provided in his decision. (R. 31). The Court finds that the ALJ did not err in evaluating Plaintiff's subjective allegations because he thoroughly reviewed them in accordance with the regulations, and he provided sufficient explanation as to why he found those allegations to be not entirely credible.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion Summary Judgment (Doc. No. 9) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 11) is GRANTED.

s/Alan N. Bloch<br>
United States District Judge

ecf: Counsel of record

---

In sum, the ALJ addressed the relevant evidence in the record, and he thoroughly discussed the basis for his RFC finding. After careful review of the record, the Court finds that there is substantial evidence to support the ALJ's well-reasoned assessment of the evidence in the record. Additionally, the Court finds that the ALJ did not err in evaluating Plaintiff's credibility. Accordingly, the Court affirms.